CASE NO. 21-4467

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

GESANU TIMOTHY XIONG,

*Defendant - Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

**REPLY BRIEF OF APPELLANT**

John G. Baker
FEDERAL PUBLIC DEFENDER FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

Joshua B. Carpenter
Appellate Chief
1 Page Avenue, Suite 210
Asheville, NC 28801
828-232-9992
joshua_carpenter@fd.org

*Counsel for Appellant*

## Table of Contents

Page

Table of Authorities ...................................................................................................ii

Introduction ............................................................................................................... 1

    I.      The parties agree that resentencing is required based on the district court's criminal-history error ................................................................ 1

    II.     The Court should hold that Xiong's prior conviction—under a marijuana statute that covered both marijuana and hemp—does not qualify as a "controlled substance offense." ........................................ 3

          A.    The intervening *Hope* decision—which the government does not address—supports Xiong's position .................................. 4

          B.    The government's reliance on *McNeill* is misplaced........................ 8

          C.    The government's attempt to expand *Ward* to non-criminal regulations is unjustified ............................................................. 11

Conclusion............................................................................................................... 12

# Table of Authorities

## Cases

*Dorsey v. United States*,
    567 U.S. 260 (2012) ................................................................................ 7

*McNeill v. United States*,
    563 U.S. 816 (2011) ............................................................................. 8, 9

*Taylor v. United States*,
    495 U.S. 575 (1990) ............................................................................... 10

*United States v. Abdulaziz*,
    998 F.3d 519 (1st Cir. 2021) ................................................................ 6, 9

*United States v. Bautista*,
    989 F.3d 698 (9th Cir. 2021) .............................................................. 5, 11

*United States v. Clark*,
    46 F.4th 404 (6th Cir. 2022) .................................................................. 10

*United States v. Cornette*,
    932 F.3d 204 (4th Cir. 2019) ............................................................ 8-9, 9

*United States v. Green*,
    996 F.3d 176 (4th Cir. 2021) ................................................................... 2

*United States v. Hope*,
    28 F.4th 487 (4th Cir. 2022) ........................................................... *passim*

*United States v. Rangel-Castaneda*,
    709 F.3d 373 (4th Cir. 2013) ................................................................. 11

*United States v. Robinson*,
    744 F.3d 293 (4th Cir. 2014) ................................................................... 3

*United States v. Ward*,
    972 F.3d 364 (4th Cir. 2020) ............................................................. 6, 12

*Yee v. City of Escondido*,
    503 U.S. 519 (1992) ................................................................................. 3

**Statutes**

18 U.S.C. § 924 ....................................................................................................... 4

18 U.S.C. § 3553 ..................................................................................................... 5

28 U.S.C. § 991 ....................................................................................................... 7

28 U.S.C. § 994 ....................................................................................................... 7

**Other**

U.S.S.G. § 1B1.11 ............................................................................................... 5, 6

U.S.S.G. § 4B1.2 ............................................................................................ 5, 7, 8

## Introduction

This appeal presents two issues under the federal sentencing guidelines. On the first, regarding Gesanu Xiong's criminal-history calculation, the government concedes in its response brief that the district court committed an error that requires a remand for resentencing. On the second issue, which will recur at the resentencing, the parties continue to disagree. The question is whether Xiong's 2013 conviction for marijuana distribution—under an outdated state law that treated hemp as marijuana—qualifies as a predicate offense that enhances his guidelines range.

That question turns on whether the guidelines' definition of a "controlled substance offense" looks to the law in effect at the time of the prior conviction or the law in effect at the time of the federal sentencing. Recently, after Xiong filed his opening brief, this Court adopted a time-of-sentencing approach for cases under the Armed Career Criminal Act. *See United States v. Hope*, 28 F.4th 487 (4th Cir. 2022). The reasoning of *Hope*, which relied heavily on guidelines principles, supports applying that same approach in this case. The government's arguments to the contrary lack merit, as explained below.

**I.     The parties agree that resentencing is required based on the district court's criminal-history error.**

Let's begin, briefly, with the criminal-history issue. The parties agree on three things: (1) that the district court erred in calculating Xiong's criminal-history score; (2)

1

that this error increased the advisory guidelines range; and (3) that a remand for resentencing is warranted. *See* Op. Br. at 7-10; Gov't Br. at 8-10.

Despite this agreement, the parties disagree about the appropriate standard of review. In the government's view, Xiong is subject to the more onerous plain-error standard because he failed to preserve his criminal-history objection at sentencing. Gov't Br. at 7-8. Because the parties agree that remand is warranted under that standard, the Court need not address the preservation issue. *See, e.g.*, *United States v. Green*, 996 F.3d 176, 184 (4th Cir. 2021) (declining to resolve dispute about standard of review where relief is warranted "[e]ven if plain error review is appropriate").

If the Court chooses to address the standard of review, it should hold that Xiong properly preserved his objection. In its brief, the government concedes that the criminal-history issue—whether the district court erred by assigning two points, rather than one, to an alternative fine-or-imprisonment sentence—is directly resolved by an application note in the guidelines. *See* Gov't Br. at 8-9. But the government argues that plain-error review is appropriate because Xiong cited "the application note for the first time on appeal." Gov't Br. at 9.

That argument lacks any support. The record is clear that Xiong objected at every available opportunity. When the PSR assigned two points to the prior conviction, Xiong filed a written objection arguing that "this is a one-point offense, not two." JA 117. Then, at sentencing, Xiong reiterated the argument, which the district court expressly considered and rejected. JA 45-46. By objecting to the number

2

of criminal history points assigned to this conviction, Xiong preserved his objection under this Court's decision in *United States v. Robinson*, 744 F.3d 293, 300 (4th Cir. 2014). And, contrary to the government's suggestion, Xiong is permitted on appeal to elaborate on the legal arguments made below. Citing new authority—such as the application note—does not change the standard of review. *Id.* at 300 n.6 ("Although he did not make this precise argument before the district court, Robinson did challenge his criminal history score, and thus preserved his claim."), citing *Yee v. City of Escondido,* 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.").

**II.    The Court should hold that Xiong's prior conviction—under a marijuana statute that covered both marijuana and hemp—does not qualify as a "controlled substance offense."**

Xiong explained in his opening brief that the categorical approach's application to his prior marijuana conviction turns on an analytical question that had not yet been addressed by this Court: Is the definition of a "controlled substance" under the guidelines measured by the law in effect at the time of sentencing or the law in effect at the time of the prior conviction? Two months after Xiong's brief was filed, this Court adopted the time-of-sentencing approach—consistent with Xiong's argument—in *United States v. Hope*, 28 F.4th 487 (4th Cir. 2022), a case arising under the analogous Armed Career Criminal Act.

3

The government sought abeyance in this case pending a rehearing petition in *Hope*. *See* Motion to Place Appeal in Abeyance (Dkt. No. 27) (March 28, 2022). It acknowledged, in doing so, that the *Hope* decision "may affect the ultimate resolution of Xiong's appeal." *Id.* at 2 (cleaned up). The Court ultimately denied the government's rehearing petition, leaving the panel decision in place. Nonetheless, in its response brief, the government does not address *Hope*'s impact. But when *Hope* is considered, as it must be, it shows that Xiong's position is correct; the government's contrary arguments lack merit.

**A.    The intervening *Hope* decision—which the government does not address—supports Xiong's position.**

The *Hope* case presented the Court with facts very similar to this case. The defendant there had a 2013 conviction for distributing marijuana under a South Carolina statute that defined marijuana to include both marijuana and hemp. 28 F.4th at 498-99. The government argued that the conviction satisfied the ACCA's definition of a "serious drug offense," which includes state-law distribution offenses involving "a controlled substance." 18 U.S.C. § 924(e)(2)(A) (definition of "serious drug offense"). As it does here, the government argued that the definition of a "controlled substance" must be measured by the law in effect at the time of the prior conviction. 28 F.4th at 504. Under that timing rule, the prior conviction would qualify because it was undisputed that, in 2013, both state and federal law defined marijuana to include hemp. *Id.* at 497-98.

4

By contrast, the defendant argued—and this Court agreed—that the categorical-approach analysis must define a "controlled substance" using the law in effect "at the time of [the defendant's] sentencing." *Id.* at 504. Under that timing rule, the prior conviction did not qualify as a predicate because its inclusion of hemp rendered it broader than the current definition of a "controlled substance." *Id.* at 504-06.

The Court's rationale for adopting the time-of-sentencing rule applies equally in this case. Although *Hope* involved the ACCA, the Court's reasoning relied heavily on guidelines principles. Specifically, the Court cited the following guidelines authority to conclude that the current, time-of-sentencing definition must serve as the comparator in ACCA cases:

- 18 U.S.C. § 3553(a)(4)(A)(ii), which requires the district court to use the guidelines manual "in effect on the date that the defendant is sentenced." *See Hope*, 28 F.4th at 507-08.

- U.S.S.G. § 1B1.11, which also requires the district court to use the manual "in effect on the date that the defendant is sentenced." *See Hope*, 28 F.4th at 505.

- *United States v. Bautista*, 989 F.3d 698, 703 (9th Cir. 2021), which holds that the § 4B1.2(b) "controlled substance offense" definition is determined by *current* law at time of federal sentencing because "it would be illogical to conclude that federal sentencing law attaches 'culpability and dangerousness' to an act that, at the time of sentencing, Congress has concluded is *not* culpable and dangerous. Such a view would prevent amendments to federal criminal law from affecting federal sentencing and would hamper Congress' ability to revise federal criminal law." *See Hope*, 28 F.4th at 505 & n.15.

5

- *United States v. Abdulaziz,* 998 F.3d 519, 531 (1st Cir. 2021, which holds the same as *Bautista*. *See Hope,* 28 F.4th at 512 & 513 n. 3 (Thacker, J., dissenting, but agreeing with the majority that "that we must compare the South Carolina drug schedules as of the date of Appellant's § 44-53-445 convictions and the federal drug schedules as of the date of Appellant's federal sentencing").

Because the *Hope* decision relies heavily on this guidelines authority to adopt the time-of-sentencing rule for ACCA cases, it necessarily follows that the same timing rule would apply to guidelines cases like this one. In fact, the argument for a time-of-sentencing rule under the guidelines is even stronger because the guidelines—unlike the ACCA—expressly call for current law to apply. *See* U.S.S.G. § 1B1.11.

To be clear, we acknowledge that there is an important difference in the "controlled substance" analysis under the ACCA and the guidelines. As explained in the opening brief, this Court split with several other circuits by holding in *United States v. Ward*, 972 F.3d 364 (4th Cir. 2020), that the guidelines' definition of a "controlled substance" turns on state law; the definition does not, under *Ward*, incorporate the analogous definition from the federal Controlled Substances Act. The government relies on this difference to assert that the time-of-sentencing rule does not apply to the guidelines "controlled substance" definition. But the government's argument is misplaced because whether a "controlled substance" is defined by state law versus federal law does not change the answer to the timing question presented by this case. That question was neither presented nor decided in *Ward*.

6

The adoption of a time-of-sentencing rule in *Hope* finds additional support in both *Dorsey v. United States*, 567 U.S. 260 (2012), and the Sentencing Reform Act. In *Dorsey*, the Supreme Court explained that the Sentencing Reform Act of 1984 established a background sentencing principle that, absent an ex post facto violation, the sentencing law that applies is the law in effect on the date the defendant is sentenced. *Id.* at 275-76. This permits the Sentencing Commission to "reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process," 28 U.S.C. § 991(b)(1)(C), and to ensure that guidelines sentences take into account the evolving "community view of the gravity of the offense," and "the public concern generated by the offense." 28 U.S.C. § 994(c)(4), (5). These animating principles of the Sentencing Reform Act counsel against interpreting "controlled substance" in § 4B1.2(b) based on the government's time-of-conviction approach, which would sweep in prior convictions under outdated and overbroad state laws.

In sum, the combination of *Hope* and *Ward* dictates the following analysis under § 4B1.2: A prior state drug offense qualifies as a "controlled substance offense" if the state definition of the drug (as it existed at the time of the prior conviction) matches the current state definition of the drug (as it exists at the time of the federal sentencing).

7

### B. The government's reliance on *McNeill* is misplaced.

The government's response brief identifies "two reasons" that, in its view, Xiong's argument for a current-law approach should fail. First, the government cites *McNeill v. United States*, 563 U.S. 816, 825 (2011), for the proposition that "this Court determines whether a state offense qualifies as a controlled substance offense by consulting the state law in effect 'at the time of the defendant's state conviction for that offense.'" Gov't Br. at 15.

The government's reliance on *McNeill* fails because that decision addresses a different component of the categorical-approach analysis. As *Hope* makes clear, the categorical approach requires the Court to do three things in a case like this one: (1) determine the elements of the prior conviction, *see Hope*, 28 F.4th at 498-503; (2) determine the elements of the relevant predicate definition (here, § 4B1.2's definition of a "controlled substance offense"), *see id.* at 497-98; and (3) compare the two to determine if the prior conviction's elements match, or are narrower than, those of the predicate definition, *see id.* at 504.

The *McNeill* decision applies to the first of these steps but not the second—a dichotomy that is, once again, illustrated by the recent decision in *Hope*. There, in determining the elements of the defendant's prior conviction, the Court looked back in time to "South Carolina's definition of 'marijuana' at the time he was sentenced for his state offenses on May 22, 2013." *Hope*, 28 F.4th at 504. The Court cited, as the basis for this approach, the decision in *United States v. Cornette*, 932 F.3d 204, 213 (4th

8

Cir. 2019), which determined the elements of a prior burglary conviction by looking to the law in effect at the time of the prior conviction in 1976. The *Cornette* decision, in turn, relied on *McNeill* in applying this time-of-conviction rule for determining a prior conviction's elements. *See Cornette*, 932 F.3d at 213.

This approach makes sense because "the elements of and penalties attached to the offense underlying a 'previous conviction' were locked in as of the time of that 'conviction.'" *Abdulaziz*, 998 F.3d at 525 (citing McNeill, 563 U.S. at 820). By contrast, at the second step of the analysis, the parameters for determining what qualifies as a predicate offense are subject to change. In *Cornette*, for example, the ACCA had not even been passed at the time of the prior conviction in 1976. Likewise, the Sentencing Commission regularly amends the "crime of violence" and "controlled substance offense" definitions.

Nothing in *McNeill* suggests, much less dictates, that its time-of-conviction rule applies to the second step. As the First Circuit has explained, "*McNeill* simply had no occasion to address that question, because there had been no relevant change in that case to those criteria." 998 F.3d at 526.

And, most importantly for our purposes, this Court in *Hope* expressly declined to apply *McNeill* to the second step. *See Hope*, 28 F.4th at 504-05. Instead, as described

9

above, it adopted a time-of-sentencing rule for determining the contours of the predicate definition. *Id.*[1]

Finally, the *Hope* approach makes good sense because applying *McNeill* to the second step would turn the categorical approach on its head. In *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court explained that the categorical approach serves to "protect[ ] offenders from the unfairness of having enhancement depend upon the label employed by the State of conviction." *Id.* at 589. To further that purpose, the Court held that the term "burglary" in the ACCA "must have some uniform definition independent of the labels employed by the various States' criminal codes." *Id.* at 592; *see also id.* at 590 (concluding that Congress intended to use "uniform, categorical definitions to capture all offenses of a certain level of seriousness").

If *McNeill* were extended to defining the predicate offense (at the second step), these uniformity goals would be destroyed. Instead of a comparison to a uniform definition, the categorical-approach analysis would treat every state drug conviction as a "controlled substance offense" without regard to the content of the state definition. In other words, the heart of the categorical approach—a comparison of the elements

---

[1] The government cites an out-of-circuit case that, in contrast to *Hope*, adopted a time-of-conviction approach. *See* Gov't Br. at 18-19 (citing *United States v. Clark*, 46 F.4th 404 (6th Cir. 2022)). Aside from being non-binding, the *Clark* decision also conflicts with both *Hope* and the guidelines cases relied upon by *Hope* (*Bautista* and *Abdulaziz*).

10

of the prior offense with those of the predicate definition—would be eliminated if *McNeill* is applied at step two. Without any independent comparator, the state's labels would control the "controlled substance offense" analysis regardless of the substance involved and whether it has now been decriminalized.

This reliance on the state's labels—rather than the actual content of state law—would violate *Taylor*'s foundational principles. Indeed, as Judge Wilkinson has recognized in a unanimous opinion, the categorical approach is designed to avoid precisely this kind of disparity, where "conduct that is perfectly legal for some people could subject many others in neighboring states to years upon years in federal prison." *United States v. Rangel-Castenada*, 709 F.3d 373, 377 (4th Cir. 2013) (Wilkinson, J.).

This result would be particularly perverse in the context of decriminalized controlled substances. As *Hope* recognized, adopting a time-of-conviction approach would have the "illogical" result of applying a draconian sentencing enhancement based on conduct that, at the time of sentencing, is no longer considered "culpable and dangerous." *Hope*, 28 F.4th at 505 (quoting *Bautista*, 989 F.3d at 703).

C. **The government's attempt to expand *Ward* to non-criminal regulations is unjustified.**

The government's second argument is that *Ward* resolves the specific issue in this case. But the timing issue was neither presented nor addressed in *Ward*, so the government cannot—and does not—suggest that *Ward* addressed that question.

11

Instead, the government argues that the timing question is "immaterial" in this case. It says that *Ward* stands for the proposition that the "controlled substance" definition reaches "*any type of drug* whose manufacture, possession, and use is *regulated by law*." Gov't Br. at 15 (quoting *Ward*, 972 F.3d at 371; emphasis added by government). It then argues that, at the time of Xiong's sentencing, "even 'industrial hemp' remained regulated by state law." Gov't Br. at 15. To support that argument, the government relies on the fact that "industrial hemp is produced and used in compliance with rules issued by the North Carolina Industrial Hemp Commission." Gov't Br. at 14 n.1.

But the existence of such civil regulations does not render a substance "controlled" under the career-offender guidelines; if it did, myriad items—including alcohol and tobacco—would qualify. This approach is untenable.

\*   \*   \*

In sum, consistent with both *Hope* and controlling guidelines principles, this Court should hold that the definition of a "controlled substance" under the guidelines is determined by the law in effect at the time of sentencing, not the law in effect at the time of the prior conviction. Under that rule, Xiong's prior conviction does not qualify as a "controlled substance offense."

## Conclusion

The district court committed two separate errors in calculating Xiong's guidelines range. This Court should vacate Xiong's sentence and remand with

instructions for the district court to correct the errors and resentence Xiong based on the correctly calculated range.

 

        Respectfully submitted:

        /s/ Joshua B. Carpenter
        Joshua B. Carpenter
        Appellate Chief
        Federal Public Defender for the
        Western District of North Carolina
        One Page Avenue, Suite 210
        Asheville, NC 28801
        (828) 232-9992
        Joshua_Carpenter@fd.org